IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM INGRAM, )
        Plaintiff )
)
) Civil Action No.: JFM-02-539
)
v. )
)
)
GIANT FOOD, INC., et al., )
)
        Defendants )
)

OPINION

Plaintiff William Ingram, a former warehouse worker for Giant Food, Inc., has filed suit against Giant[1] alleging racially disparate treatment, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and adding related state law claims. Defendants now move for summary judgment as to all counts. The motion will be granted.

I.

Ingram was hired by Giant in May 1989 as a produce selector at its Landover, Maryland,

---

[1] Ingram has also asserted claims against several of Giant's employees. Those defendants are entitled to summary judgment for the reasons stated in the accompanying opinion in Carson v. Giant Food, Inc., JFM-96-2882. That opinion also addresses Ingram's hostile environment claims under Title VII and section 1981 and state law claims against Giant, in addition to global arguments made by Ingram and other Plaintiffs concerning the early right-to-sue notices issued to them by the Equal Employment Opportunity Commission and the viability of applying the continuing violation doctrine. Thus, this opinion focuses only on Ingram's disparate treatment and retaliation claims under Title VII and section 1981.

1

warehouse. (Def.'s Mem. at 1.) As a selector, Ingram would select and prepare produce for shipment to Giant supermarkets. (Id.) Ingram held this job for nearly seven years, until he was discharged by Giant in 1996 for allegedly falsifying a medical record and accruing numerous unexcused absences. (Id. at 2.)

According to Giant, Ingram's job performance suffered significantly beginning in 1993, when he was warned repeatedly about low productivity. (Id.) Beginning in late 1994, Giant states that Ingram also was warned repeatedly about taking unexcused sick leave, including three days in 1994 and 16 days in 1995. (Id. at 3-5.) Ingram received separate three-day suspensions for both alleged problems. (Id. at 3.)

In March 1996, after he had been absent from work for nearly two weeks on sick leave that Giant had not approved, Ingram presented Giant with a required medical certification form. (Id. at 5.) The form stated that Ingram had been ill with the flu and had been treated by Dr. Arnaldo D. Garro. (Id.) When Giant sought to verify the information on the form, it alleges that it learned that Ingram had not been treated by Dr. Garro and that the signature appearing on the form was not Dr. Garro's. (Id. at 5-6.) Giant discharged Ingram[2] for excessive absenteeism and violating a company policy on honesty. (Id. at 6.)

Ingram filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 2, 1996, amending the charge on June 21, 1996. (Id.) The

---

[2] Giant claims that the discharge was effective March 26, 1996. (Def.'s Mem. at 6.) Plaintiff counters that his termination was not effective until May 1996. (Pl.'s Opp'n at 1.) For purposes of deciding this motion, I construe the evidence in the light most favorable to the Plaintiff and assume he was not terminated until May 1996. In any event, the difference between the two termination dates is not material for purposes of this motion.

2

EEOC issued him a right-to-sue letter on June 28, 1996, and Ingram commenced this suit on September 12, 1996. (Id.) Ingram, who is African-American, contends that white employees were not disciplined and fired as he was, despite committing similar infractions.[3]

II.

Ingram alleges that he was subjected to disparate treatment regarding Giant's sick leave policy, disciplinary policy, and workload requirements. He also contends he was fired in retaliation for filing a race discrimination charge with the EEOC. The merits of those two claims under Title VII are discussed in turn below.

A.

Plaintiff first claims that he was subject to disparate treatment under Title VII.[4] To establish a claim under Title VII, Plaintiff must offer direct evidence of discriminatory intent on the part of the defendant or meet a three-part test for inference of discriminatory intent under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under the McDonnell Douglas scheme, a plaintiff alleging disparate treatment must first establish a prima facie case. Settle v. Baltimore County, 34 F.Supp.2d 969, 991 (D. Md. 1999). If plaintiff does so, the burden of production then shifts to the defendant to offer a "legitimate non-discriminatory reason for its actions." Id. If defendant satisfies this burden, the burden of production shifts back to the plaintiff to demonstrate that defendant's proffered reason is a mere pretext, and that

---

[3] Ingram also denies submitting the false doctor's certificate as alleged by Giant. (Id. at 4.)

[4] "Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification such as race." Carter v. Ball, 33 F.3d 450, 456 n.7 (4th Cir. 1994).

3

discrimination was the real reason for the discharge. See Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993).

Plaintiff in this case has not presented direct evidence of discriminatory intent on the part of Giant. Thus, his claim will be considered under the McDonnell Douglas scheme. To establish a prima facie case of disparate disciplinary practices, which is a type of disparate treatment claim, see Settle, 34 F.Supp.2d at 991, a plaintiff must show "(1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees." Cook, 988 F.2d at 511; Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir.1985). In order to carry the burden of his prima facie case, a plaintiff must compare "only discipline imposed for like offenses. . . ." Cook, 988 F.2d at 511.

Plaintiff received warning notices and a three-day suspension for low productivity and was suspended for excessive absenteeism. He was terminated for excessive absenteeism and his alleged submission of a false medical certification. He offers several examples in an effort to show the discipline he received was harsher than that given to white workers for similar offenses.

Plaintiff offers three examples of white workers were treated differently with regards to absenteeism: Craig McNally, John Lowe, and John Owens. (Ingram Dep. at 75, 133.) McNally took unexcused sick leave for two days and then was allowed to get a medical certification after he had returned to work, according to Plaintiff. (Id. at 75-76.) Plaintiff contends this documentation was false, although he offers no proof of that assertion. (Id. at 131.) He asserts that Lowe and Owens each had three unexcused absences in three months. (Id. at 134.) They

were disciplined but not fired, according to Ingram. (Id.)

As to dishonesty, Plaintiff cites as comparable cases a white manager, Robert Diecher, who was found to have falsified time cards for white employees and who was reassigned, not fired;[5] and a white employee, Robert Dedrick, who was given a last chance letter[6] after falsifying work-related documents.[7] (Pl.'s Opp'n at 10-11.) Robert Haywood, director of distribution at the Landover distribution center, acknowledged that Dedrick was given a last chance letter for "padding" a selection sheet, though he was ultimately discharged. (Haywood Dep. at 210-11.)

None of the above examples provide support for Plaintiff's assertion that white employees were treated differently than he was, because none of the above cases involve the same combination of offenses that Giant alleges Plaintiff committed: both excessive unexcused absenteeism (amounting to nearly two weeks in 1996 alone, not the two or three absences Plaintiff cites for McNally, Lowe, and Owens) and dishonesty in violation of company policy. Even if Dedrick's case were to prove comparable – which, lacking the excessive absenteeism component, it is not – Plaintiff has not presented evidence by which a reasonable jury could find he had established a case of disparate discipline. The Fourth Circuit has held that a single

---

[5] Plaintiff does not cite to the record for reference to an employee named "Diecher." (See Pl.'s Opp'n at 10.) Plaintiff thus appears to offer nothing but an inadmissible, unverified hearsay account of this allegedly comparable case.

[6] A last chance letter, known formally as a Conditional Return to Duty Agreement, subjects an employee to immediate discharge if he violates the agreement or engages in any further misconduct.

[7] Plaintiff also mentions a white employee who was not disciplined despite being caught having sex with a manager and a white employee who was fired for bringing a weapon to work but was immediately rehired. (Pl.'s Opp'n at 11.) Those two cases are in no way "like offenses" to Plaintiff's own. Cook, 988 F.2d at 511.

5

circumstance of allegedly dissimilar disciplinary treatment, devoid of the context of disciplinary treatment "generally afforded by the employer for conduct similar to that of the plaintiff," is not sufficient to establish an inference of racial discrimination.[8] Cook, 988 F.2d at 512.

Plaintiff's citation to an expert report by Dr. Harriet Zellner does not buttress his case. Dr. Zellner, an economist and president of Integral Research Inc., prepared an economic analysis of race discrimination at Giant retail stores and in its distribution division. (Pl.'s Ex. Vol. 1.) Her findings as to the distribution division are of limited utility, however, because they do not provide a separate analysis for the Landover warehouse, where Plaintiff worked, or for the particular position of selector, which Plaintiff held. Further, Dr. Zellner analyzed discipline for the period 1994 to 1998, whereas Plaintiff was employed from 1989 to 1996. Finally, she does not provide detail on the type or level of offense for which the employees she studied were disciplined. While statistics can be highly relevant and "important proof" in an employment discrimination case, Carter, 33 F.3d at 456, "[t]he usefulness of statistics depends on the

---

[8] Plaintiff also contends that white employees were treated differently than he was by being held to different, lower production standards, and by having removed from their personnel files disciplinary notices they received for being outside their work areas that were filed later than the union contract allows, whereas similar late-filed notices remained in his personnel file. (Ingram Dep. at 76-77, 95.) None of these asserted instances of disparate treatment, however, rises above the level of hearsay, and therefore they are not sufficient to provide support to Plaintiff's case on a summary judgment motion. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).
   Further, a Title VII claim requires an "adverse employment action" that impacts the "terms, conditions, or benefits of employment." Von Gunten v. State of Maryland, 243 F.3d 858, 865 (4th Cir. 2001); see also Porter v. National Con-Serv, Inc., 51 F.Supp.2d 656, 658 (D. Md. 1998), aff'd 173 F.3d 425 (4th Cir. 1999) (requiring proof of adverse employment action in case that involved, inter alia, claims of disparate disciplinary practices). Because Plaintiff has not presented any evidence that these actions were bases for his firing or otherwise adversely affected a term, condition, or benefit of his employment, he has not established the necessary prerequisite to a Title VII claim.

surrounding facts and circumstances." Id. Here, because the statistics are unrelated to Plaintiff's particular workplace, job position, and the offenses for which he was disciplined, they do not assist him in establishing a prima facie case. Accordingly, his Title VII claim of disparate discipline will be denied.[9]

B.

Plaintiff's next claim under Title VII is that his firing in 1996 was in retaliation for an EEOC complaint he had filed on or about December 1, 1995.[10] Defendant counters that the claim was not administratively exhausted, and that, even if it were, Plaintiff has neither established a prima facie case of retaliation nor demonstrated pretext.

Even assuming this retaliation claim is not administratively barred from consideration here, it still fails because Plaintiff has failed to make out a prima facie case of retaliation. A prima facie case of retaliation consists of three requirements: "(1) plaintiff engaged in protected activity, such as filing an EEO complaint; (2) the employer took adverse employment action against plaintiff; (3) a causal connection existed between the protected activity and the adverse

---

[9] Even if Plaintiff were to establish a prima facie case of disparate discipline, Giant has provided a legitimate, non-discriminatory reason for its disciplining of him: his unexcused absences and its conclusion that he had violated the company policy on honesty. Plaintiff has failed to prove that Defendant's proffered reason for discharging him was false, and that the real reason he was fired was his race, both of which are required to establish pretext. See DeJarnette v. Corning, Inc., 133 F.3d 293, 298 (4th Cir. 1998).

[10] Defendant asserts that Plaintiff's claim should fail because he has not produced the December 1, 1995 EEOC charge of discrimination. (Def.'s Reply at 10-11.) In his opposition, Plaintiff indicates that the charge is Exhibit 1, and was filed in December 1995 or January 1996. However, no such exhibit is attached to the opposition. Plaintiff does provide an EEOC charge information form date-stamped January 18, 1996, as part of the exhibits to his Amended Complaint. I thus assume this January 18, 1996 form is the one relevant to his retaliation charge, and, drawing inferences in favor of Plaintiff, that it is sufficient to constitute an EEOC "charge."

action." Carter, 33 F.3d at 460. Plaintiff here filed an EEOC complaint and was fired,[11] thus meeting the first two requirements for a prima facie case. However, Plaintiff has failed to establish causation, as required by the third prong, because he has not offered evidence that the officials responsible for his termination knew of any EEOC complaint when he was fired. See, e.g., Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444 (4th Cir. 1998) (rejecting retaliation claim where plaintiff provided no evidence that the supervisor who fired her knew of her discrimination claim); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (explaining that "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case").

Plaintiff alleges that Haywood, director of distribution at the Landover warehouse, made the decision to fire Ingram. (Pl.'s Opp'n at 22.) Haywood has asserted in an affidavit that he did not know when he fired Ingram that Ingram had filed charges of race discrimination against Giant. (Haywood Supp'l Dec. ¶ 4.) Similarly, Otis Ashton, Giant's Landover warehouse superintendent, also was present at Ingram's termination meeting and also has asserted that he did not know that Ingram had filed an EEOC complaint. (Ashton Dec. ¶ 16.) Because he has not demonstrated knowledge of his complaint by the Giant managers who terminated him, thus failing to show causation, Plaintiff cannot establish a prima facie case of retaliation as a matter of law. Defendant's motion as to Plaintiff's claim for retaliation will be granted.

---

[11] I have accepted Plaintiff's May 1996 termination date as true for purposes of this motion. Although the parties dispute what action, if any, Plaintiff had pending before the EEOC in January 1996, they do not dispute that he filed an EEOC charge on April 2, 1996, before the date on which Plaintiff claims to have been fired.

III.

Giant next argues that it is entitled to summary judgment on Plaintiff's § 1981 claims, which parallel the claims he made under Title VII. The same elements of a prima facie case are required for § 1981 as for Title VII. See Gairola v. Virginia, 753 F.2d 1281, 1285 (4th Cir. 1985). Thus, because I have granted Defendant's motion as to Plaintiff's Title VII disparate treatment and retaliation claims, I will grant Defendant's motion as to Plaintiff's § 1981 disparate treatment and retaliation claims.

A separate order is attached.

Date: *[signature]*

*[signature]*
J. Frederick Motz
United States District Judge